UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. JEFFREY JACOBS,<br><br>    Plaintiff,<br><br>    v.<br><br>CDS, P.A. d/b/a POCATELLO WOMEN'S HEALTH CLINIC; POCATELLO HOSPITAL, LLC, d/b/a PORTNEUF MEDICAL CENTER, LLC, a Delaware limited liability company; LHP POCATELLO, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 4:14-cv-00301-BLW<br><br>MEMORANDUM DECISION & ORDER |

### INTRODUCTION

Pending before the Court is Plaintiff-Relator Dr. Jeffrey Jacobs' Motion to Compel (Dkt. 45) as well as defendants' motions for a protective order (Dkts. 44, 46). For the reasons explained below, the Court will grant in part and deny in part all pending motions.

### BACKGROUND

Dr. Jeffrey Jacobs filed this action on behalf of the United States pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3724 et. seq.  Jacobs alleges that

the Pocatello Women's Health Clinic ("CDS" or "the clinic") and the Portneuf Medical Center ("Portneuf" or the "Medical Center") have submitted patient claims to the Medicare and Medicaid programs, falsely certifying that such claims were in compliance with the Stark Act, 42 U.S.C. § 1395nn and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b.

The parties are in the midst of discovery. Following an unsuccessful attempt to informally mediate their discovery disputes, the parties filed the pending motions. The parties' disputes are discussed more fully below, but the key to resolving many of the issues raised by the pending motions is to identify and clarify the temporal and substantive scope of this lawsuit. Defendants say the relevant time period is roughly three years (January 2010 through January 31, 2014) while plaintiff says that a much longer period of time (2009 to present) is relevant for purposes of discovery. Substantively, defendants say discovery should focus on Dr. Jacobs' dealings with the defendants. Dr. Jacobs, by contrast, argues that the substantive focus is much broader. He characterizes his complaint as alleging a scheme potentially involving the defendants' dealings with numerous physicians – not just him.

## DISCUSSION

Dr. Jacobs moves to compel defendants to answer various interrogatories and to produce various categories of documents. CDS and the Medical Center have separately filed motions for a protective order.

1.      **The Governing Legal Standards**

Federal Rule of Civil Procedure 26(b)(1) governs the scope and limits of

**MEMORANDUM DECISION & ORDER - 2**

discovery.  It provides that "[p]arties may obtain discovery regarding any nonprivileged matter" if the information is both (1) "relevant to any party's claim or defense" and (2) "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Information "relevant to any party's claim or defense," need not be admissible into evidence in order to be discoverable. *Id.*  When determining whether discovery is "proportional to the needs of the case," the court examines the information requested in light of six factors: "[1] the importance of the issues at stake in action, [2] the amount in controversy, [3] the parties' relative access to relevant information, [4] the parties' resources, [5] the importance of the discovery in resolving the issues, and [6] whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

If, as here, a party resists discovery, the requesting party may file a motion to compel. *See* Fed. R. Civ. P. 37(a)(1). A facially valid motion to compel has two components. First, the motion must certify that the movant has "in good faith conferred or attempted to confer" with the party resisting discovery. *Id.*  Second, the motion must include a threshold showing that the information in controversy is relevant and discoverable under Rule 26. *See, e.g., Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 (1978).

Protective orders are governed by Rule 26(c), which provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "To justify a protective order, the moving party cannot rely on "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, . . . ." *Beckman Indus.,*

MEMORANDUM DECISION & ORDER - 3

*Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir.1992) (citing *Cipollone v. Liggett Group*, Inc., 785 F.2d 1108, 1121 (3rd Cir.1986)).

## 2. The Temporal Scope of Discovery

Defendants have resisted plaintiff's discovery efforts to the extent he seeks information and documents falling outside the period January 1, 2010 to January 31, 2014. The allegations of the complaint logically shape the scope of discovery and, in this case, plaintiff is seeking discovery for a far broader time period than that detailed in the complaint. As already noted, plaintiff wishes to obtain documents and information beginning in 2009 and continuing into the present. The complaint, however, focuses on the period August 2010 through May 2013.

Dr. Jacobs executed an employment agreement with CDS in June, 2010. At the same time, he executed a Physicians Recruitment Agreement with CDS and the Medical Center, along with a security agreement and a promissory note. Jacobs began seeing and treating patients in August 2010 at CDS and the Medical Center. He remained employed by CDS and continued seeing patients until May 2013, when his employment ended. *Second Am. Compl.*, Dkt. 38, ¶ 15. Dr. Jacobs' Physicians Recruitment Agreement – and the payments made during the time it was in effect – are at the heart of this lawsuit. That is, Dr. Jacobs repeatedly alleges that every claim for Medicare or Medicaid reimbursement *during the period August 2010 to May 2013* violated the FCA. *See, e.g., id.* ¶¶ 95-96 (alleging that "from the time period of August 2010 to May 2013" CDS falsely certified that information contained in relevant forms was "'true, accurate, and complete.'"); *id.* ¶ 102 (alleging that "[a]ll payments made by the United States to

Defendants for services provided to Medicare and Medicaid patients between August 2010 and May 2013 are subject to recoupment by the paying agency"). Given these allegations, defendants' identification of a slightly larger time period for discovery purposes (January 1, 2010 through January 31, 2014) is reasonable.

Plaintiff's efforts to avoid the limitations established by the complaint are not persuasive. Plaintiff's key argument is that in a qui tam action, it is unfair to limit the discovery period to the time of the relator's employment *See Motion Mem.,* Dkt. 45-1, at 7. He cites *United States ex rel Fiederer v. Healing Hearts Home Care, Inc.*, 2014 WL 4666531 (D. Nev. Sept. 18, 2014) to support this argument. In *Fiederer,* the relator had worked as a nurse for 28 days. The Court rejected defendants' attempt to restrict discovery to that 28-day period, observing that plaintiff's allegations implicated a larger time frame. Here, by contrast, the complaint does not directly implicate a larger time frame; to the contrary, it repeatedly focuses on the time period August 2010 through May 2013 and seeks recovery for payments made during that period. *See, e.g., Second Am. Compl.* ¶¶ 44, 55, 59, 90, 93-97, 102, 110-14, 120, 131, 139. Indeed, one of Dr. Jacobs' central allegations is that "[a]ll payments made by the United States to Defendants for services provided to Medicare and Medicaid patients between August 2010 and May 2013 are subject to recoupment by the paying agency." *Id.* ¶ 102.

Lastly, the Court is not persuaded by plaintiff's other arguments offered in support of his efforts to reach back to 2009 in his discovery efforts. As an example, plaintiff says he should be allowed to examine all physician recruitment agreements (PRAs) dating back to 2009 because defendants identified "physician recruitment agreements (plural)

MEMORANDUM DECISION & ORDER - 5

between LHP/Portneuf and CDS" in their initial disclosures.  Plaintiff says that defendants cannot fairly "identify documents it claims it may use to support its defenses and then claim Jacobs cannot seek them in discovery." *Motion Mem.*, Dkt. 45-1, at 9. This does not change the fact that the complaint very specifically focuses on the period 2010 to 2013.

     Likewise, the Court is not persuaded by plaintiff's related contention that he should be allowed to examine all physician recruitment agreements dating back to 2009 to help demonstrate "knowledge and intent." Here, plaintiff speaks in broad generalities, saying simply that he should be permitted examine these additional agreements because "the changes throughout the years to the physician recruitment agreements will be instrumental to demonstrating knowledge and intent." *Motion to Compel.*, Dkt. 45-1, at 9.  He goes on to say that, "because the Stark Law was implemented in stages, the physician recruitment agreements should show those incremental changes, illustrating Defendants' knowledge of the law and its requirements." *Id.*  Plaintiff further says that "the actual Additional Incremental Costs paid to other physicians and how that was managed and evaluated by Defendants would assist in showing the necessary knowledge related to a fraudulent scheme." *Id.*  Based on these general statements, plaintiff says "Defendants should be required to produce documents and information related to the financial relationships between the parties, the prohibited financial relationships arising out of the physician recruitment agreements between Defendants, associated documents showing the Additional Incremental Costs, and how they were handled during the 2009 to present time frame."

Preliminarily, these arguments are not specific enough to be persuasive. Among other things, plaintiff should have further explained how and when the law changed, why it changed, and how the relevant agreements might be expected to change. The Court does not find these sorts of arguments persuasive, and it is not inclined to force defendants to turn over the broad categories of documents plaintiff is demanding.

For all these reasons, the Court will deny Dr. Jacobs' motion to compel to the extent it generally seeks to compel defendants to produce documents and information outside the time period January 1, 2010 through January 31, 2014. *See United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013 (limiting temporal scope of discovery in a false claims act to the two-year period repeatedly referenced in the complaint, notwithstanding a cursory, information-and-belief allegation that improper activity was "continuing").

### 3. The Substantive Scope of Discovery

The next disputed issue is the substantive scope of discovery. Defendants say plaintiff should not be allowed to conduct discovery regarding other doctor's physician recruitment agreements. Defendants say that such a restriction makes sense given that "Plaintiff's material substantive allegations are limited to payments associated solely with Dr. Jacobs' recruitment agreement." *Motion Mem.*, Dkt. 46. Plaintiff, however, characterizes his complaint more broadly. He says he is alleging a broader scheme whereby physician recruitment agreements *generally* were used as a device for the hospital to improperly pay for patient referrals. According to plaintiff, he spelled out the

details of his own agreement merely as a representative example of a larger scheme involving additional physicians.

The complaint itself, however, is mainly focused on a single recruitment agreement: Dr. Jacobs'. That agreement, in turn, forms the springboard for plaintiff's allegation that the United States is entitled to recover for misconduct associated with that agreement. Notably, however, in paragraph 85 of the complaint, Dr. Jacobs specifically identifies three other physicians: (1) Dr. Michael Jones; (2) Dr. Joel Carlson, and (3) Dr. William Stringer. Dkt. 38, ¶ 85. Dr. Jacobs alleges – based on "information and belief," – that "other physicians," including these three, "have been recruited under similar arrangements and entered into PRAs [physician recruitment agreements] that failed to meet the applicable Stark Law exception or AKS 'safe harbor' provision, . . . ." *Id.*

Defendants say this information-and-belief allegation cannot justifiably open the doors to broad and burdensome discovery. *See Motion Mem.*, Dkt. 44, at 5 (citing *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-4672, 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013) ("Cursory allegations, made on information and belief alone, are unquestionably insufficient to open the door to broad and burdensome discovery.").

The Court generally agrees that this allegation should not allow "broad and burdensome" discovery. After all, in a qui tam action, a "relator is supposed to be an insider, one who advances claims she knows about because of her unique position that the government does not know." *United States v. Cancer Treatment Centers of Am.*, 2003 WL 21504998, at * (N.D. Ill. June 30, 2003). Moreover, "a qui tam action is not a roving commission to investigate all the financial dealings of the defendants." *Id.*

In one sense, plaintiff's efforts to examine documents related to all physician recruitment agreements stretching back to 2009 begins to feel like a roving commission – particularly where plaintiff's allegations do not, in the main, bear out the assertion that he has alleged a broader scheme.  Nevertheless, based on plaintiff's assertion that all payments made during period August 2010 through May 2013 violated the FCA, combined with his allegation that other physicians were recruited under similar arrangements, the Court will require that defendants' produce other physician recruitment agreements that were in effect during this time period.

Defendants have complained that such discovery would be burdensome, but the Court does not have enough specific information about the documents potentially at issue to reach this conclusion.  Further, the Court will order the parties to meet and confer in an effort to tailor discovery such that it is *not* overly broad or burdensome and limited to specific categories of documents.  Although the Court is not entirely familiar with the body of documents, it would seem that an initial document production relating to PRAs in effect during this period, might be limited to the following:

(1) The PRAs themselves.

(2) Summaries of payments made under the PRAs.

(3) Copies of any checks issued to the physicians, but cashed by CDS.

(4) Copies of 1099s given to doctors in relation to the PRAs.

### 3. The 25-Interrogatory Limit

Finally, the Court will resolve the parties' dispute regarding the 25-interrogatory limit established by Federal Rule of Civil Procedure 33.  The defendants object for

MEMORANDUM DECISION & ORDER  - 9

different reasons. The Court will first resolve LHP[1] and Portneuf's objections and will then move to CDS's objections.

### A. LHP & Portneuf

Plaintiff served 34 interrogatories upon defendants Portneuf and LHP. The first set contained 16 interrogatories and the second set contained 18. *See* Dkt. 45-5 (Portneuf & LHP's Responses to First Discovery Requests); Dkt. 45-6 (Portneuf & LHP's Responses to Second Discovery Requests).

Portneuf and LHP are refusing to answer anything beyond the 25th interrogatory, citing Federal Rule of Civil Procedure 33, which limits parties to 25 interrogatories unless otherwise stipulated or ordered by the Court. *See* Fed. R. Civ. 33(a)(1); *see also* Dist. Idaho Local R. 33.1.

Dr. Jacobs says he did not believe his first 16 interrogatories counted toward the 25 because the Court "ordered" him to propound these interrogatories. *See Motion*, Dkt. 45-1, at 2 (defining these interrogatories as "'Court-Ordered Discovery'"). In fact, the Court did not order such discovery. Rather, in the context of ruling on a motion to dismiss, the Court gave Dr. Jacobs the option of either: (1) amending his complaint to plead a direct claim against defendant LHP; or (2) conducting discovery that would allow him to plead a direct claim against LHP. *See Sept. 28, 2015 Order*, Dkt. 33, at 24, 29. Dr. Jacobs' first 16 interrogatories were then served.

---

[1] Plaintiff alleges that LHP owns 77% of the membership interest in an entity that, in turn, owns over 98% of the membership interests in Portneuf. *Compl.*, Dkt. 38, ¶ 14.

The Court never squarely addressed whether any discovery plaintiff conducted on the pleading issue was meant to count toward the 25. More importantly, however, Dr. Jacobs continued to press for answers to these interrogatories even after defendants offered to respond to Dr. Jacobs' first two requests for admission with sufficient information about defendants' corporate relationship to permit Dr. Jacobs to plead specific facts against LHP in the Second Amended Complaint. Defendants also agreed not to challenge Dr. Jacobs' complaint on this issue. In short, then, the pleading issue regarding LHP was put to rest relatively quickly – thus obviating the need for plaintiff to conduct discovery on this particular pleading issue.

Plaintiff says the information sought by the 16 interrogatories is pertinent to his claims even after the pleading issue was resolved. But, as defendants point out, if plaintiff continues to believe these interrogatories will yield information relevant to his claim, then these interrogatories logically should count toward the allowable limit of 25. *See* Dkt. 46, at 10 n.5.

Plaintiff disagrees with this assertion, but in an effort to resolve the matter, he offered to withdraw 9 of the 34 interrogatories. *See* Dkt. 45-1, at 6 (offering to withdrawing interrogatory nos. 9 and 10 from the first set of interrogatories and nos. 1, 7, 11, 12, 13, 14, and 18 from the second set). Portneuf and LHP refused this offer, stating that "the interrogatories that Plaintiff offers to withdraw effectively have been answered or made irrelevant by Defendant's answers to Plaintiff's other discovery requests." *Medical Center & LHP's Motion for Protective Order,* Dkt. 46, at 10.

The parties did not conduct a line-item review of each interrogatory at issue in their briefing, and the Court will likewise decline to do so. That said, however, the Court has reviewed each question and response at issue and has determined that plaintiffs' proposed solution is reasonable. The Court will therefore order Portneuf and LHP to respond to all pending interrogatories other than interrogatory nos. 9 and 10 from the first set of interrogatories and interrogatory nos. 1, 7, 11, 12, 13, 14, and 18 from the second set.

Finally, the Court observes that this particular dispute should have been resolved without judicial intervention of any sort. In the future, the Court expects the parties to approach discovery more constructively, with an eye to resolving disputes such as this one without judicial intervention.

**B. CDS.**

*The 25-Interrogatory Limit.* CDS complains that plaintiff exceeded the 25-interrogatory limit by serving this interrogatory, which contains various subparts:

> Interrogatory No. 16: For each Request for Admission (below) to which you respond in any form other that an unequivocal admission, please identify and describe in detail the bases in fact and law for your denial or conditional admission. In responding to this Interrogatory, please identify the Request for Admission for which you are providing the bases in fact and law for your response.

This interrogatory potentially asks up to 16 separate questions, given that plaintiff served 16 Requests for Admission upon CDS. The Court will not require CDS to respond to this interrogatory to the extent it takes plaintiff outside the 25-interrogatory limit. However,

Plaintiffs may identify which 10[2] of the denied Requests for Admission should be explained as requested in Interrogatory No. 16.

### *Patient Confidentiality.*

CDS has also complained more specifically about two discovery requests – Interrogatory No. 14 and Request for Production No. 18. Interrogatory No. 14 asks for this information: "Please identify each Patient, since 2004, whom you referred to Portneuf Medical Center for designated health services as defined in 42 U.S.C. § 411.351." Request for Production No. 18 asks CDS to "produce a copy of any and all submissions made by you since 2004 to either Medicare or Medicaid relating to receiving reimbursement for goods or services provided." CDS has objected to these requests on the basis that they improperly seek personal identifying information for its patients. CDS additionally complains that Interrogatory No. 14 does not appear to be limited to patients for whom Medicare or Medicaid claims were submitted.

The problem with CDS's motion on this point is that it does not appear the parties have met and conferred. Rather, after LHP and Portneuf attempted to informally mediate the various disputes outlined above, and then received permission to file motions, CDS asked Court staff to participate in the briefing, even though it had not participated in the mediation. Because CDS said most of its objections mirrored those asserted by LHP and

---

[2] Plaintiff propounded 15 substantive interrogatories, plus the offending catch-all Interrogatory No. 16. Therefore, plaintiff is entitled to an explanation of 10 denials – not 9 as CDS suggests. *See Motion,* Dkt. 44, at 7 (CDS objected to Interrogatory No. 16 "to the extent it seeks information concerning any more than nine (9) Requests for Admission, which CDS did not unequivocally admit.")

Portneuf, the Court allowed CDS to file its pending motion.

And, in fact, CDS's objections largely *did* mirror LHP and Portneuf's objections. Among other things, CDS had the same complaints about the substantive and temporal scope of discovery and the 25-interrogatory limit. But the patient-confidentiality issue is a new one, not addressed in LHP or Portneuf's objections. Court staff did not attempt to mediate this dispute and there is not full briefing on the issue. So the Court is not in a position to rule. The Court will therefore order the parties to meet and confer on this issue and report back to Court staff if they are unable to resolve the issue. In an effort to guide these meet-and-confer efforts, the Court offers the following:

(1) The Court would not be inclined to force CDS to provide information or documents dating from 2004 to present. Rather, for the reasons discussed above, the relevant period for discovery would be January 1, 2010 through January 31, 2014.

(2) It would appear that the parties could resolve the patient-confidentiality issue by either coming to terms with regard to a proposed protective order and/or agreeing that identifying information (such as name, address, gender, social-security number) be removed.

(3) The Court is inclined to agree that any information provided in response to Interrogatory No. 14 should be limited to patients for whom Medicare or Medicaid claims were submitted.

**ORDER**

**IT IS ORDERED that:**

(1) CDS's Motion for a Protective Order (Dkt. 44) is GRANTED in part and DENIED in part as explained above.

(2) Plaintiff's Motion to Compel (Dkt. 45) is GRANTED in part and DENIED in part as explained above.

(3) Portneuf and LHP's Motion for a Protective Order (Dkt. 46) is GRANTED in part and DENIED in part as explained above.

DATED: August 3, 2016

B. Lynn Winmill
Chief Judge
United States District Court