UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. JEFFREY JACOBS,<br><br>  Plaintiff,<br><br>  v.<br><br>CDS, P.A. d/b/a POCATELLO WOMEN'S HEALTH CLINIC; POCATELLO HOSPITAL, LLC, d/b/a PORTNEUF MEDICAL CENTER, LLC, a Delaware limited liability company; LHP POCATELLO, LLC, a Delaware limited liability company,<br><br>  Defendants. | Case No. 4:14-cv-00301-BLW<br><br>MEMORANDUM DECISION & ORDER |

## INTRODUCTION

Before the Court is Plaintiff-Relator Dr. Jeffrey Jacobs' Motion for Reasonable Attorneys' Fees and Costs (Dkt. 65). For the reasons explained below, the Court will deny the motion without prejudice for lack of standing.

## BACKGROUND

In July 2014, Dr. Jeffrey Jacobs filed this action on behalf of the United States pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3724 et. seq. Jacobs alleged that the Pocatello Women's Health Clinic and the Portneuf Medical

Center submitted patient claims to the Medicare and Medicaid programs, falsely certifying that such claims were in compliance with the Stark Act, 42 U.S.C. § 1395nn and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b. According to Dr. Jacobs, the Medical Center and the Women's Health Clinic engaged in a scheme to illegally shift the clinic's overhead costs to the medical center as a reward to the clinic for referrals.

In January 2017, Dr. Jacobs filed a Chapter 7 bankruptcy petition, and shortly after that the United States decided not to intervene in this action. *See In re Jacobs*, No. 17-00018-TLM (Bankr. D. Idaho); *Notice of Election to Decline Intervention,* Dkt. 53. The bankruptcy trustee was prepared to abandon the estate's interest in this action, which would have allowed Dr. Jacobs to pursue it on his own. When defendants learned of a potential abandonment, however, they indicated a willingness to settle. *See Ex. B to Casperson Dec., Motion to Approve Compromise,* Dkt. 65-4, at 6.

In late 2017, defense counsel and the bankruptcy trustee reached an agreement. *See Settlement Agreement, In re Jacobs*, Case No. 17-00018-TLM, Dkt. 41-1 (Bankr. D. Idaho). Under the agreement, defendants agreed to pay $69,087 to settle the matter. *See id.* ¶ 1. Of this amount, the United States would keep $51,816 and the remaining $17,271 would be paid to Dr. Jacobs' bankruptcy estate. The settlement agreement did not obligate defendants to pay attorneys' fees, but the trustee did not release that claim either. *Id.* ¶ 2. Instead, the settlement agreement provided that this Court would retain jurisdiction to enforce the terms of the settlement agreement, "including but not limited to any claim by Relator for attorneys' fees." *See id.* ¶ 13; *see also Joint Stipulation of Dismissal,* Dkt. 63, ¶ 5 ("The Court will retain jurisdiction over the Parties to the extent

necessary to enforce the terms and conditions of the Settlement Agreement, including but not limited to any claim by Relator for attorney's fees.").

Shortly after the settlement agreement was finalized, Dr. Jacobs filed the pending motion. He asks the Court to award $97,945 in attorneys' fees and $1,130.57 in costs.

## DISCUSSION

### A. *Qui Tam* Actions

The False Claims Act, 31 U.S.C. § 3729 et. seq., authorizes a private suit against a party that has defrauded the United States. If the suit is successful, the United States and the private plaintiff (called the "relator") divide the proceeds. 31 U.S.C. § 3730(d). "Such suits are known as *qui tam* actions, from the Latin *qui tam pro domino rege quam pro se imposo sequitur*, meaning 'he who brings the action for the king as well as for himself.'" *United States v. Texas Instruments Corp.*, 104 F.3d 276, 277 (9th Cir. 1997). The government may choose to intervene in the action, or it may decline to do so. Either way, a successful relator is entitled not only to a share of the proceeds, but also to "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). Here, Dr. Jacobs' bankruptcy estate settled the claim with defendants, so an award for costs and fees should be issued.

### B. Standing

The problem, however, is that Dr. Jacobs lacks standing to pursue fees and costs. As noted, Dr. Jacobs filed a chapter 7 bankruptcy petition in January 2017. Under the Bankruptcy Code, the filing of a Chapter 7 petition creates an estate consisting of "all

**MEMORANDUM DECISION & ORDER - 3**

legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Dr. Jacobs' claim against defendants includes the potential right to an attorneys' fee award arising from the claim. Thus, after Dr. Jacobs filed bankruptcy, the trustee – not Dr. Jacobs individually – gets to decide whether to pursue attorneys' fees.

For Dr. Jacobs to pursue a fee motion on his own, the Trustee would first have to abandon this aspect of the *qui tam* claim. *See* 11 U.S.C. § 554(a)-(c). Generally, a bankruptcy trustee can abandon a claim in one of three ways: (1) the trustee, after notice and hearing, may abandon property deemed burdensome or of inconsequential value to the estate; (2) the bankruptcy court, at the request of a party and after notice and hearing, may order the trustee to abandon any property; and (3) property is abandoned by operation of law if it has been formally scheduled and not otherwise administered at the time the bankruptcy case is closed. *Id.*

Here, given the terms of the settlement agreement, it seems likely that the trustee will, in fact, abandon any claim to attorneys' fees and allow Dr. Jacobs to pursue this motion. But at this point, there has been no abandonment. The Court will therefore deny the motion, without prejudice, for lack of standing. *Cf. In re Steward*, 828 F.3d 672, 680 (8th Cir. 2016) (district did not err in concluding trustee had abandoned right to seek motion for disgorgement of attorney fees because before that motion was filed, the trustee had certified that the estate was fully administered and had requested to be discharged from her duties as trustee).

To clarify, however, the Court is not persuaded by defendants' argument that Dr.

**MEMORANDUM DECISION & ORDER - 4**

Jacobs' attorneys – Holden, Kidwell, Hahn & Crapo, P.L.L.C. – lack standing to pursue this motion. This law firm has not withdrawn as counsel of record and Dr. Jacobs filed this motion "by and through counsel of record, Holden, Kidwell, Hahn & Crapo, P.L.L.C. . . . ." Motion, Dkt. 65, at 1. Accordingly, there is no standing issue there. The standing issue arises from the fact that the trustee has not abandoned the right to seek costs and fees.

If the trustee abandons this aspect of the *qui tam* claim, Dr. Jacobs may renew his motion for fees and costs. And if he does so, the parties shall submit supplemental briefing on the issue of whether any attorneys' fee award should be paid directly to Dr. Jacobs, rather than to his attorneys, in light of the Supreme Court's decision in *Astrue v. Ratliff*, 560 U.S. 586 (2010) (interpreting the text of the Equal Access to Justice Act to mean that an award of attorneys' fees is to be paid directly to the party and not the attorney); *see also United States v. Kim*, 806 F.3d 1161, 1174 (9th Cir. 2015) (recognizing that *Ratliff* abrogated *United States ex rel Virani v. Jerry M. Lewis Truck Parts & Equip., Inc.*, 89 F.3d 574 (9th Cir. 1996)).

## ORDER

IT IS ORDERED that Plaintiff-Relator's Motion for Reasonable Attorneys' Fees and Costs (Dkt. 65) is **DENIED WITHOUT PREJUDICE.**

DATED: June 7, 2018

B. Lynn Winmill
Chief U.S. District Court Judge