UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* DR. JEFFREY JACOBS,<br><br>    Plaintiff,<br><br>    v.<br><br>CDS, P.A. d/b/a POCATELLO WOMEN'S HEALTH CLINIC; POCATELLO HOSPITAL, LLC, d/b/a PORTNEUF MEDICAL CENTER, LLC, a Delaware limited liability company; LHP POCATELLO, LLC, a Delaware limited liability company,<br><br>    Defendants. | Case No. 4:14-cv-00301-BLW<br><br>MEMORANDUM DECISION & ORDER |

## INTRODUCTION

Before the Court is Plaintiff-Relator Dr. Jeffrey Jacobs' Renewed Motion for Reasonable Attorneys' Fees and Costs (Dkt. 71). Plaintiff seeks $106,532 in attorneys' fees and $1,130.57 in costs. For the reasons explained below, the Court will award the full amount of costs but will reduce the attorneys' fees to $79,904.

## BACKGROUND

In July 2014, Dr. Jeffrey Jacobs filed this action on behalf of the United States pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3724 et. seq.

Jacobs alleged that the Pocatello Women's Health Clinic and the Portneuf Medical Center submitted patient claims to the Medicare and Medicaid programs, falsely certifying that such claims were in compliance with the Stark Act, 42 U.S.C. § 1395nn and the Anti-Kickback Act, 42 U.S.C. § 1320a-7b. According to Dr. Jacobs, the medical center and the women's health clinic engaged in a scheme to illegally shift the clinic's overhead costs to the medical center as a reward to the clinic for its referrals to the medical center.

In January 2017, Dr. Jacobs filed a Chapter 7 bankruptcy petition, and shortly after that the United States decided not to intervene in this action. *See In re Jacobs*, No. 17-00018-TLM (Bankr. D. Idaho); *Notice of Election to Decline Intervention,* Dkt. 53. The bankruptcy trustee did not intend to litigate this action on behalf of the bankruptcy estate; he was prepared to abandon the estate's interest in this action, which would have allowed Dr. Jacobs to pursue it on his own.

When defendants learned of a potential abandonment, they indicated a willingness to settle. *See Ex. B to Casperson Dec., Motion to Approve Compromise,* Dkt. 65-4, at 6. In late 2017, defense counsel and the bankruptcy trustee reached an agreement. *See Settlement Agreement, In re Jacobs*, Case No. 17-00018-TLM, Dkt. 41-1 (Bankr. D. Idaho). Defendants agreed to pay $69,087 to the United States. *See id.* ¶ 1. Of this amount, the United States would keep $51,816 and the remaining $17,271 would be paid to Dr. Jacobs' bankruptcy estate. The settlement agreement did not obligate defendants to pay attorneys' fees incurred in this action, but Dr. Jacobs did not release that claim either. *Id.* ¶ 2. Instead, the settlement agreement provided that this Court would retain

jurisdiction to enforce the terms of the settlement agreement, "including but not limited to any claim by Relator for attorneys' fees. *See id.* ¶ 13; *see also Joint Stipulation of Dismissal,* Dkt. 63, ¶ 5 ("The Court will retain jurisdiction over the Parties to the extent necessary to enforce the terms and conditions of the Settlement Agreement, including but not limited to any claim by Relator for attorney's fees.").

Shortly after the settlement agreement was finalized, Dr. Jacobs asked the Court to award attorneys' fees and costs. *See* Dkt. 65. The Court denied the motion, without prejudice, because the bankruptcy trustee had not yet abandoned any claim to attorneys' fees. *See June 7, 2018 Order,* Dkt. 69, at 4-5. Jacobs reports that the trustee has now abandoned any claim to attorneys' fees. *See* Dkt. 71-1, at 1. Accordingly, he renews his motion for attorneys' fees. He asks the Court to award $106,532 in attorneys' fees and $1,130.57 in costs.

## DISCUSSION

**1.     Plaintiff's Entitlement to Attorneys' Fees**

It is undisputed that the prevailing plaintiff in a declined qui tam action is entitled to receive "an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs." 31 U.S.C. § 3730(d)(2). Here, Dr. Jacobs settled the claim with defendants, so there is no question that his attorneys are entitled to a fee award.

The calculation of a reasonable fee award involves a two-step process. *Fischer v. SJB–P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). First, the court calculates the presumptive fee award, also known as the "lodestar figure," by taking the number of

hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* (*citing Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Second, in "appropriate cases" the court may enhance or reduce the lodestar figure based on an evaluation of the factors set forth in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), that were not taken into account in the initial lodestar calculation. *Intel Corp. v. Terabyte Intern., Inc.*, 6 F.3d 614, 622 (9th Cir.1993) (citation omitted).[1] The Ninth Circuit has cautioned that there is a "strong presumption" that the lodestar figure represents a reasonable fee and that adjustment upward or downward is "the exception rather than the rule." *D'Emanuele v. Montgomery Ward & Co.*, 904 F.2d 1379, 1384 (9th Cir. 1990).

A. The Lodestar Calculation

1) A Reasonable Hourly Rate

To determine a reasonable hourly rate, the district court looks to hourly rates prevailing in the relevant legal community for similar work performed by attorneys of comparable skill, experience, and reputation. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (per curiam). The "relevant legal community" is generally the forum in which the district court sits. *Mendenhall v. NTSB*, 213 F.3d 464, 471 (9th Cir. 2000). Plaintiff's complaint was filed in the Eastern Division of the District of Idaho. Thus, the

---

[1] The *Kerr* factors are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Kerr,* 526 F.2d at 70.

relevant legal community is Pocatello, Idaho. *See Alliance for Property Rights & Fiscal Responsibility v. City of Idaho Falls*, No. 4:12-cv-146-BLW, 2013 WL 551028, at *5 (D. Idaho. Feb. 12, 2013).

Four attorneys worked on this case for plaintiff, at the following rates: DeAnne Casperson ($300 per hour); Amanda E. Ulrich ($275 per hour); and D. Andrew Rawlings ($175 per hour); and Ryan Dustin ($225 per hour). The Court's task is to determine an appropriate market rate for these attorneys. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* The Ninth Circuit has noted that "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990).

Plaintiff submit two affidavits in support of their rates; one from counsel DeAnne Casperson and another from attorney James Holman. Both attorneys state that the billing rates set out above are in line with the prevailing market rates in Southeastern Idaho. Additionally, this Court previously awarded $300 per hour for Ms. Casperson's time in an employment case. *See Williams v. Madison County,* Case No. 4:12-cv-00561-JCC–CWD, 2015 WL7853911 (D. Idaho Dec. 3, 2015).

Defendants do not challenge Mr. Rawlings' or Mr. Dustin's billing rates, but they argue that Ms. Casperson's and Ms. Ulrich's rates should be reduced by $25 per hour. Defendants say a reduction is appropriate because this litigation is not particularly complex and because these attorneys lacked experience litigating False Claims Act cases.

The Court is not persuaded. First, this is a complex case, notwithstanding defendants' suggestions to the contrary. Second, although these attorneys may have lacked experience in precisely this sort of complex litigation, they have significant experience in complex litigations within the employment arena, including whistleblower claims. Accordingly, based on the information provided in counsel's affidavits, the Court finds that the rates charged by counsel are within the prevailing market rates for Southeastern Idaho for this type of work. Thus, the Court will use the following hours rates in the calculating the lodestar figure: $300 per hour for Ms. Casperson; $275 per hour for Ms. Ulrich; $225 per hour for Mr. Dustin; and $175 per hour for Mr. Rawlings.

### 2) Time Spent on the Litigation

The next question is whether the time spent on this litigation, a total of 402.2 attorney hours, is reasonable. *See Casperson Supp. Aff.*, Dkt. 71-2, ¶ 7.

Defendants argue that counsel's hours should be reduced for time counsel spent engaging defendants in a discovery dispute. Defendants say that plaintiffs were pursuing unnecessary discovery and that their follow-on efforts to compel production from defendants were largely unsuccessful. Defendants thus ask the Court to eliminate time spent on discovery from late November through early March.

The Court has reviewed the briefing on that discovery dispute and agrees that some reduction is appropriate. As explained in the Court's ruling on plaintiff's motion to compel, plaintiffs pursued discovery that exceeded the substantive and temporal bounds of the complaint. *See Aug. 3, 2016 Order,* Dkt. 48. The dispute unnecessarily increased the litigation costs. The Court has reviewed counsel's time entries, and it appears that counsel was immersed almost completely in discovery efforts from early December 2015 through late March 2016. Defendants do not isolate any specific entries; they essentially just ask the Court to eliminate all time billed during those months. The Court is not inclined to cut the hours so drastically but will instead very conservatively estimate that 21 hours of the time billed during that period was excessive. The Court will divide that reduction across the three attorneys' billing rates – 7 hours apiece charged to Rawlings, Ulrich, and Casperson. (Mr. Dustin did not begin billing on this case until much later.)

Defendants also challenge two minor time entries, asserting that that these obvious errors likely mean there are other, latent errors.

First, defendants note that on February 18, 2016, Ms. Ulrich block-billed 2.0 hours to various tasks, including time spent attending a discovery conference with the Court. Ms. Casperson billed 2.8 hours on the same day, but all of that time was billed to attending the discovery conference. Ms. Casperson says she is confident she spent 2.8 hours on this action on February 8, 2016 but assumes she must have omitted some of the tasks she performed that day from her time entry. She agreed to omit .8 hours to resolve the issue. The Court finds this solution acceptable.

Defendants also report that counsel's time entries for November 9, 2016 are questionable because on that date, counsel billed 12 minutes to drafting a proposed order. Defense counsel says this proposed order had already been submitted to counsel and the Court, so billing for time after the fact is an obvious error. The Court is not convinced. The Court received the draft proposed order on November 9, 2016 – the same day counsel billed time to preparing it – and counsel did not bill time for that task on any other day. As such, there does not appear to be any irregularity in the November 9, 2016 entry, much less one that would call into question counsel's entire billing records.

Given the deductions explained above, the Court finds that 380.4 of the 402.2 hours billed to this matter, accounting for $99,880 in fees, are reasonable. The final lodestar calculation looks like this:

| **Attorney** | **Hours Billed** | **Hours Allowed** | **Hourly Rate** | **Total** |
|---|---|---|---|---|
| DeAnne Casperson | 181.3 | 173.5 | $300 | $52,050.00 |
| Amanda Ulrich | 168.3 | 161.3 | $250 | $40,325.00 |
| D. Andrew Rawlings | 30.6 | 23.6 | $175 | $4,130.00 |
| Ryan S. Dustin | 15 | 15 | $225 | $3,375.00 |
| **Total** | **402.2** | **380.4** | | **$99,880.00** |

**B. Reductions for Partial Success**

The lodestar figure is presumptively the correct award. Nevertheless, reductions or enhancements may be appropriate in exceptional cases.

In *Hensley v. Eckerhart*, the Supreme Court held that the lodestar amount may be adjusted downward depending on the "results obtained." 461 U.S. 424, 434 (1983). When the prevailing party achieved only a "partial or limited success," the lodestar figure "may be an excessive amount" because "the most critical factor is the degree of success

obtained." *Id.* at 436 (emphasis added). Moreover, when the district court "reduce[s] the award to account for the limited success[,] [t]he court necessarily has discretion in making this equitable judgment." *Id.* at 436-37. As the *Hensley* Court explained, "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

Here, both sides claim victory. Defendants say they only had to pay a "trifling" amount to settle the case, which they viewed as nothing more than a nuisance case. Plaintiff, on the other hand, says it was a significant victory to get anything at all in this case, given that the parties had not completed discovery or dispositive motions.

The truth is somewhere in the middle. The money defendants paid to settle – nearly $70,000 – is not a trifling amount, but defendants correctly note that there is a significant gap between what plaintiff wanted to achieve and what he did achieve. In that regard, plaintiff has not disputed defendants' assertion that "[t]he damages Plaintiff recovered here are a tiny fraction of the damages he sought, which would have been a multiple of the total value of every allegedly tainted claim for reimbursement submitted to federal healthcare programs by the Medical Center between 2010 and 2013." *Response*, Dkt. 67, at 12-13. Likewise, defendants admitted no wrongdoing, and report that no policy change was required by the settlement. In short, plaintiff achieved a limited success, and the Court finds that this is one of those rare cases where a reduction to the lodestar amount is appropriate. After taking into account the policy considerations on all sides – *i.e.*, the encouragement of whistleblowers, whether the suit had a positive impact,

**MEMORANDUM DECISION & ORDER - 9**

the cost of litigation, and judicial economy – the Court finds that a 20 percent reduction to the lodestar figure is appropriate. Accordingly, the Court will award $79,904 ($99,880 x .80 = $79,904).

Finally, the Court will clarify that this 20 percent reduction for limited success was not taken into account into the initial lodestar calculation. Typically, if the district court plans to reduce a fee award for limited success, the Ninth Circuit prefers that the district court reduce the hours claimed and the rate sought instead of adjusting the lodestar figure after it has already been calculated. *See Corder v. Gates*, 947 F.2d 374, 378 (9th Cir. 1991) ("Since consideration of limited success is presumably subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate, district courts should not ordinarily make a separate adjustment for limited success.") (citation and quotation marks omitted). But although a separate lodestar reduction for limited success is generally "disfavored," such an adjustment is permissible so long as the court "partition[s] its 'lodestar' analysis from consideration of ... degree of success" and "account[s] for ... limited success only once." *See id*. Here, the unadjusted lodestar does not account for plaintiff's limited success. Although some time was deducted for time plaintiff spent pursuing discovery as well as a minor adjustment plaintiff's counsel agreed to, those deductions are entirely unrelated to the limited success plaintiff achieved here. Accordingly, this separate lodestar adjustment raises no risk of double-counting. *See Cabrales v. L.A. Cnty.*, 864 F.2d 1454, 1465 (9th Cir.1988) *cert. granted, judgment vacated*, 490 U.S. 1087 (1989) and opinion reinstated, 886 F.2d 235 (9th Cir.1989) ("Mathematically, it is inconsequential whether the lodestar figure itself is adjusted for

lack of success or whether the reasonable hours component of the lodestar is adjusted for lack of success. What matters is that the district court did not 'count' for lack of success twice.").

2. **Costs**

Defendants do not contest plaintiffs' request for $1,130.57 in costs. This sum will therefore be added to the award.

3. **Payment to Attorney**

Finally, defendants do not take any position as to whether the fees should be paid directly to Jacobs, or to his attorneys. Given that Dr. Jacobs has assigned his right to receive fees to his attorneys, the Court will order that defendants pay the award to the attorneys.

**ORDER**

IT IS ORDERED that Plaintiff-Relator's Renewed Motion for Reasonable Attorneys' Fees and Costs (Dkt. 71) is **GRANTED in part and DENIED in part.** The motion is granted to the extent that the Court will award plaintiffs $79,904 in fees and $1,130.57 costs. The motion is **DENIED** to the extent it seeks additional sums.

DATED: November 30, 2018

_____
B. Lynn Winmill
Chief U.S. District Court Judge